# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                                    )
                                         )        Case No.  10-01484-TLM
RICHARD W. HOYLE,                        )
                                         )        Chapter 11
                   Debtor.               )
_____        )

## MEMORANDUM OF DECISION
_____

Pending before the Court are a Motion to Dismiss or Convert Case, Doc.

No. 254 ("§ 1112 Motion"), filed by the United States Trustee ("UST"), and

confirmation of a Plan of Reorganization Dated July 6, 2012, Doc. No. 279

("Third Plan"), filed by chapter 11 debtor Richard W. Hoyle ("Debtor").[1]  The

UST, and the Idaho State Board of Land Commissioners acting by and through the

Idaho Department of Lands ("IDL"), objected to confirmation of the Third Plan,

and the IDL also joined in the § 1112 Motion.  Debtor, the UST, and the IDL each

presented evidence and oral argument at a hearing held November 14 and 15, 2012

("Hearing").  At the conclusion of the Hearing, the Court took these matters under

advisement.

The Court concludes that cause exists to dismiss or convert Debtor's case to

_____

[1] Unless otherwise indicated, all chapter, section and other statutory references are to the
Bankruptcy Code, Title 11, U.S.C. §§ 101–1532 (the "Code"), and all rule references are to the
Federal Rules of Bankruptcy Procedure 1001–9037.

MEMORANDUM OF DECISION - 1

chapter 7, and that Debtor has failed to satisfy the § 1112(b) burdens to avoid

dismissal or conversion.  The § 1112 Motion will be granted, and the case will be

converted to chapter 7 by separate order entered today.[2]  By reason of these

conclusions, confirmation of the Third Plan is rendered moot.  If not mooted, the

Court concludes confirmation of the Third Plan would be denied for failure to

meet the requirements of § 1129(a).

This Decision constitutes the Court's findings and conclusions pursuant to

Rules 7052 and 9014 on all pending matters.[3]

**BACKGROUND AND FACTS**[4]

Debtor is a real estate investor and developer with some 30 years of

experience.  He filed a voluntary petition under chapter 11 on May 17, 2010.

Although he is married, his wife did not join his petition or file her own.  Debtor's

---

[2]  Among other things, § 1112(b)(3) requires the Court to render a ruling not later than 15 days after the hearing "unless . . . compelling circumstances prevent the court from meeting the time limits established by this paragraph."  This Decision's date exceeds the 15–day deadline. However, the issues in this case required detailed review of a voluminous record and consideration of numerous arguments.  The Court finds the additional delay falls within the statutory exception.

[3]  This Court has jurisdiction over all the issues addressed in this Decision, 28 U.S.C. § 1334, and the same are core proceedings, 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(L), (b)(2)(O).

[4]  In addition to the evidence presented at hearing, the Court has considered the evidence presented at prior hearings.  The Court has also considered witness credibility, and the weight to be given testimony, even where such considerations are not specifically noted in this Decision.  It takes judicial notice of those portions of its files and records, not otherwise introduced as exhibits by the parties, for the purpose of providing procedural context.  It considers Debtor's sworn filings in this case under Fed. R. Evid. 801(d)(2).

MEMORANDUM OF DECISION - 2

business, a sole proprietorship operated under the assumed business name Hoyle

Investment, has focused on developing land and renovating properties to sell, with

additional income from rentals of those properties.  Most of Debtor's real estate

properties are located in Valley County, Idaho, although he also owns property in

Ada County, Idaho and Malheur County, Oregon.  Debtor has continued to market

real estate and operate his rental properties as a debtor in possession.

Debtor is also the sole member of three limited liability companies:

(1) Brundage Inn, LLC, (2) Villa Verona, LLC, and (3) Brundage, LLC.  Brundage

Inn, LLC, owns and operates a hotel in McCall, Idaho.  It also previously owned

and rented out cabins (the Brundage Bungalows) and leased out a restaurant

building located on a parcel adjacent to the hotel until it sold the restaurant.  Villa

Verona, LLC, owns and has attempted to develop two riverfront parcels in Ada

County.  Brundage, LLC, consists of a property management company that is not

currently operating.  None of the three limited liability companies have filed

bankruptcy.  Debtor has continued acting as the managing member of the

Brundage Inn, LLC, and Villa Verona, LLC.

### A.    Schedules

Debtor filed his initial schedules and statement of financial affairs on June

7, 2010.  Ex. 302.  Debtor either inaccurately scheduled or completely failed to

disclose a number of matters, despite the fact that he signed his schedules and

MEMORANDUM OF DECISION - 3

statement of financial affairs under penalty of perjury, representing they were true and complete to the best of his knowledge.[5]

### 1.    IDL and the cottage leases

Debtor failed to include an address for the IDL, which resulted in the IDL not receiving notice of proceedings in the case for an extended period. Additionally, although Debtor listed his lease from the IDL of three Valley County "cottage" properties on his schedule G, he also inappropriately listed those properties on his schedule A.  He failed to disclose that he had previously assigned his rights under those three leases to relatives in 2006 and 2007.  Also, his schedules did not disclose his cottage lease at 1911 Warren Wagon Road in McCall, which had not been assigned.  Even when the IDL appeared in the case and raised questions about the improper scheduling and disclosures, Debtor only amended his schedules F and G[6] but never deleted the properties leased from the IDL from his schedule A.

### 2.    1007 Lake Street

Debtor also failed to schedule real property at 1007 Lake Street in McCall, Idaho, on his schedule A, despite the fact that title to this property was in his name. Debtor later stated that his omission was because he believed title was held by

---

[5]  Ex. 302 at 25, 33.

[6]  Ex. 305.

MEMORANDUM OF DECISION - 4

Brundage Inn, LLC.  This did not explain his failure to amend his schedules after he was alerted to the fact that the property was owned by him personally.[7]

### 3.    Malheur County claim

Debtor failed to include Malheur County, Oregon, as a creditor.  Debtor testified he was aware he was behind on his property taxes to Malheur County.  Given Malheur County's claim includes unpaid property taxes from 2008, 2009, and 2010, Debtor was (or through reasonable investigation and diligence should have been) aware of the claim prior to filing.  Debtor did not amend his schedule to include the County's claim until April 25, 2012, nearly two years after he filed his petition.[8]

Immediately after this amendment of the schedules and being given notice, Malheur County filed a proof of claim.  *See* Ex. 347 (proof of claim No. 41-1, filed April 27, 2012).[9]  Despite that amendment and claim, Debtor did not amend or modify his Third Plan to deal with this claim for six months, doing so on November 5, 2012, ten days before the Hearing.

---

[7]  His knowledge of the state of title, and conduct related to a post-petition sale of this property, is discussed further *infra*.

[8]  Ex. 307 (Doc. No. 246).

[9]  Debtor's amendment was to schedule E and showed Malheur County holding an unsecured priority claim.  The proof of claim asserted a secured status.

MEMORANDUM OF DECISION - 5

### 4.    Micron stock

Debtor failed to disclose on schedule B that he owned 5,000 shares of stock in Micron Technology Inc. at the time he filed his petition.  Although Debtor testified the stock was unintentionally omitted, that testimony is unconvincing, particularly because he purchased the stock for $55,459 on April 16, 2010, only one month before he filed his petition, and he sold it (without notice or Court approval) for $34,540 on August 27, 2010, little more than three months after filing his petition.[10]  Further, the sales proceeds were never reported, and Debtor also failed to amend his schedules to address the omitted stock.

### 5.    Black Forest claim

Debtor failed to schedule an outstanding promissory note, executed in 2008 and secured by a contemporaneously recorded deed of trust, he owed to Black Forest Investors, LLC ("Black Forest").  The existence of the note came to light when Black Forest sent a copy of it to the UST the day before the Hearing.[11]

Debtor testified that he believed the Black Forest note was owed by Brundage Inn, LLC, and he had signed loan documents, if at all, only as a

---

[10]  *See* Ex. 353 at 7 (2010 tax return).  The UST first learned of the stock when it reviewed a copy of the tax return one month before the Hearing.

[11]  Debtor stipulated at hearing that a copy of the note was attached to a copy of a Black Forest proof of claim that had been received in his attorneys' office on September 12, 2012.  The Court record reflects Black Forest never filed the original proof of claim.  Debtor's counsel did not confirm the filing of the claim or forward the claim to the Clerk, *see* Rule 5005(c), nor did Debtor otherwise address the omitted creditor and claim in any fashion before the Hearing.

MEMORANDUM OF DECISION - 6

guarantor.  He also testified that he believed the loan was "cross-collateralized."

Contrary to these testimonial assertions, none of the Black Forest documents

mention Brundage Inn in any way, or evidence any intent for Debtor to be bound

only as a guarantor.[12]  Even if Debtor believed his liability was that of guarantor,

he failed to explain why he did not disclose the purported guarantee of the debt to

Black Forest on his schedule F.

### B.    Financial reporting

In addition to filing incomplete and inaccurate schedules, and failing to

amend those inaccuracies when discovered, Debtor also has been consistently

deficient in his required financial reporting.

Debtor's monthly operating reports ("MORs") were often filed after the

twenty-first of the month due date and, from the Court's review of the record, it

appears the February 2011 MOR was never filed.[13]  Debtor admitted at the Hearing

that his initial MORs were not up to the standards required by the UST.

In addition to other deficiencies and omissions, the $34,540 received when

Debtor sold his 5,000 shares of stock in Micron Technology Inc. in August 2010

was not disclosed on Debtor's MOR for that month, thus concealing the

---

[12]  Ex. 355.

[13]  The UST may have received a report for that month, as its Post-Petition Income and
Expense Summary, Ex. 349, does not suggest exclusion of data for that month.

MEMORANDUM OF DECISION - 7

unauthorized sale.[14]

Debtor also had deficiencies in filing his Rule 2015.3 reports, the first of which is due no later than 7 days before the first date set for the § 341(a) meeting, with further reports filed no less frequently than every six months thereafter. *See* Rule 2015.3(b). These reports are to include detailed financial information for entities in which the Debtor holds a controlling or substantial interest. *See* Official Form 26.

His initial Rule 2015.3 report was untimely filed.[15] It included only a very summary, hand-written valuation estimate for each of the three solely-held LLCs and certificates of liability insurance. This report did not include a balance sheet, cash flow statements, statements of income or financial statements as required by the official form.[16] Debtor did not file another Rule 2015.3 report for over a year, and then filed further reports, but late and generally in a manner not compliant

---

[14] Exhibit 339 (Doc. No. 88), the MOR for August, 2010, does not show any "sales of assets" nor an amount of cash received equivalent to the $34,540 resulting from the August 27, 2010 sale of the stock as later disclosed in Debtor's 2010 tax return, Ex. 353. Further, the August 2010 MOR contains an express assertion that there were no sales of assets outside the ordinary course of business. Ex. 339 at 11. Given the late August timing of the stock sale as per the tax return, the Court has reviewed the MOR for September 2010, Doc. No. 95, which also lacks any such disclosure.

[15] *See* Doc. No. 43, filed July 31, 2010, a month and a half after the June 18, 2010 first date set for the § 341(a) meeting, rather than seven days before that date.

[16] *See* Official Form 26 (requiring, as an Exhibit B, such financial documents).

MEMORANDUM OF DECISION - 8

with the Rule or required form.[17]

These deficiencies existed despite the fact that Debtor received from the UST, and acknowledged reading, the Chapter 11 Guidelines and Reporting Requirements for Chapter 11 Debtors.[18]  These Guidelines warned in conspicuous type: "Failure to timely file required reports is cause for dismissal . . . or conversion to chapter 7."[19]  Additionally, Debtor attended an initial debtor interview ("IDI") with the UST's bankruptcy analyst, Bonnie Shuster, where she explained the reporting requirements to him.[20]

The UST moved to convert or dismiss this case in November 2011 on multiple grounds, including the failure to file Rule 2015.3 reports.[21]  Debtor then filed additional reports, although those reports again only included valuation estimates.  Debtor did not file a complete Rule 2015.3 report with the required

---

[17]  *See generally* Doc. Nos. 135, 175, 176, and 182, showing the dates and contents of the reports.

[18]  Exs. 309, 310.  *See also In re Kholyavka*, 2008 WL 3887653 at *3 (Bankr. E.D. Pa. Aug. 20, 2008) (describing the statutory bases of the reporting requirements and Guidelines, and the UST's supervision including its duty under 28 U.S.C. § 586(a)(8) to seek relief for reporting failures).

[19]  Ex. 309 at 7.

[20]  Debtor's counsel also received the Guidelines and other described documents, and accompanied Debtor to the IDI.

[21]  Although the UST's motion, Doc. No. 169, termed it a "failure" to file Rule 2015.3 reports, Debtor had filed such reports, *see* Doc. Nos. 43, 135.  However the reports were not complete or timely filed.

MEMORANDUM OF DECISION - 9

exhibits until May 31, 2012, after the UST filed the now-pending § 1112 Motion.[22]

Debtor's own expert witness, certified public accountant Jason Coles, testified that even the latter Rule 2015.3 reports contained several inaccuracies including improperly calculated depreciation and failure to use the cost basis for real property.

Coles also testified that the 2015.3 reports failed to account for equity draws. Testimony at the Hearing revealed that Debtor had taken equity draws from Brundage Inn, LLC in the forms of mortgage payments for the benefit of Villa Verona, LLC, direct bill payments for Debtor's personal expenses, and cash draws. Coles testified that, though it is not uncommon for a self-reporting individual not to report equity draws, it was nevertheless incorrect. Further, while Coles "corrected" the Rule 2015.3 reports to reflect the equity draws (including an $84,568 adjustment for the period ending December 31, 2011), the Court lacks confidence that these corrections present a fully accurate accounting given they were made by relying on Debtor's data which Coles admitted he had not verified.[23]

Additionally, the Rule 2015.3 reports did not reveal other cash receipts and

---

[22] *See* Doc. No. 261. Additional Rule 2015.3 reports not previously mentioned include Doc. Nos. 260 and 275.

[23] Coles conceded during examination that he had not reviewed Debtor's or the LLC's bank statements, was not informed of cash disbursements, had not verified accounts receivable, and was not given much information on draws, as he focused on his work trying to reconcile the balance sheets and income statements. As to the draws, and in addition to the problems with the incomplete Rule 2015.3 reports, not all the funds "drawn" from the LLC were deposited into the debtor in possession bank accounts or accounted for in Debtor's MORs.

MEMORANDUM OF DECISION - 10

expenditures.  For instance, the reports did not show that the Brundage Inn, LLC was receiving rent payments on an Arizona property owned by Debtor's wife, and was servicing the mortgage on that property.

And neither the Rule 2015.3 reports nor Debtor's MORs revealed Brundage Inn, LLC had been processing credit card transactions for Debtor's personally-owned real property rentals.  Although Debtor and his expert witness, CPA and certified fraud examiner Terri Sanders, testified that the amounts of all these credit card payments appeared to have been ultimately paid by the LLC to Debtor and deposited into debtor in possession accounts, Sanders, like Coles, relied on data provided by Debtor.

Sanders' report also reveals the amount reported as rent received on Debtor's MORs never actually matched the amount deposited in the bank.  While she testified that the total amount deposited in the debtor in possession account exceeded the amount reported, Debtor failed to persuasively explain the inaccuracies and lack of transparency in his reporting.

### C.    1007 Lake Street

As noted, Debtor did not list the ownership of 1007 Lake Street in McCall, Idaho, the restaurant property adjacent to the hotel, on his schedule A when filing the case in May, 2010.  He testified that, when he filed his petition, he believed Brundage Inn, LLC held the title to 1007 Lake Street.  Debtor learned, during the

MEMORANDUM OF DECISION - 11

case, that his assumption was incorrect. Debtor was the record owner of this real

property on the petition date, and it was property of the estate.[24]

On July 7, 2011, more than a year after filing, Debtor recorded a quitclaim

deed, Ex. 330, that had been executed in July, 2008, and in doing so transferred the

real property from Debtor's name (and, thus, from his bankruptcy estate) to

Brundage Inn, LLC.[25] Debtor did not disclose, and received no Court approval for,

the transfer.

Debtor apparently realized, when Brundage Inn, LLC was attempting to sell

the property in 2011, that this 2008 quitclaim deed had never been recorded. *See*

Ex. 327 at 13 (showing Debtor signed on behalf of Brundage Inn, LLC, an

agreement to sell the property on the same date he recorded the quitclaim deed).

However, Debtor's quitclaim deed recorded on July 7, 2011, did not satisfy

AmeriTitle, the title company handling this 2011 transaction. On July 14, 2011,

Debtor filed with the Court a "Notice that 1007 W. Lake Street, McCall, Idaho Is

Not Property of the Estate." Ex. 326. This "notice" stated the 1007 Lake Street

---

[24] *See*, *e.g.*, *Murrietta v. Fehrs (In re Fehrs)*, 391 B.R. 53 (Bankr. D. Idaho 2008) (citing § 541(a)(1) and *Butner v. United States*, 440 U.S. 48, 55 (1979)).

[25] Although not addressed by any party, a question about the conveyance is raised by the fact that, although the deed purportedly transfers the property from Debtor to Brundage Inn, LLC, Debtor signed the deed solely in his capacity as a member of Brundage Inn, LLC, rather than personally.

MEMORANDUM OF DECISION - 12

property "was and is **not** property of this bankruptcy estate." *Id.*[26]  However, even

that notice was insufficient for AmeriTitle, whose representative informed Debtor

on July 18, 2011 that they needed "the judge to sign off." Ex. 331.

On August 3, 2011, Debtor filed a "Motion for Sale of Property and

Opportunity to Object and For a Hearing."[27]  This motion stated, "The property

was believed to be in the name of Brundage Inn, LLC, but the deed therefore was

never recorded when executed (several years prior to filing this case) *and it is still*

*vested in the Debtor*." Ex. 105 (emphasis added).  The emphasized language was

inaccurate; the motion failed to disclose that the previously unrecorded deed was,

in fact, recorded a month before the motion was filed, and the property was, thus,

by that time, putatively vested in Brundage Inn, LLC, by virtue of the Debtor's

act.[28]  The motion's text further referred to Debtor, rather than Brundage Inn, LLC,

as being the seller of the property.[29]  Following notice and lack of objection, the

---

[26]  Of course, this assertion in the "notice" was incorrect and misleading, since Debtor by this date had knowledge that title to the property was in his name at the time of filing the bankruptcy, and that he had just conveyed title to Brundage Inn, LLC, post-bankruptcy on July 7, 2011, through the recording of the quitclaim deed. Contrary to the "notice" the property therefore "*was* . . . property of the estate." The notice was also knowingly misleading because it failed to explain the existence and recording of the quitclaim deed used, post-petition, to "correct" the title to match what Debtor said he had believed the ownership to be.

[27]  Ex. 105 (Doc. No. 137).

[28]  For clarity, the Court does not, in this Decision, address questions as to ownership, the sale order, or rights of parties as to the property at 1007 Lake, only questions as to the conduct of Debtor and their significance under § 1112 and § 1129.

[29]  The motion also stated that the terms of the sale were set forth in an attached Real

(continued...)

MEMORANDUM OF DECISION - 13

motion was approved, stating "Debtor is authorized to sell the property at 1007

Lake Street . . . on the terms and conditions contained in the contract for sale."

On July 9, 2012, Debtor filed a "Report of Sale" regarding the sale of 1007

Lake Street as "consummated by Debtor."[30]  This report of sale states that the

receipts are accounted for in Debtor's MORs rather than the Rule 2015.3 reports.

But the buyer's note payments were not accounted for in either place until Coles

revised the Rule 2015.3 reports.  Even then, the accounting is incorrect because it

fails to address a $45,000 payment made by the buyers to pre-pay interest on the

note.[31]

### D.    Previous plan confirmation attempts

Debtor submitted his first proposed chapter 11 plan and disclosure

statement on March 13, 2011, nearly six months after exclusivity under § 1121 had

expired.  After several objections to confirmation by creditors, and a § 1111(b)(2)

election by the largest creditor, BAC Home Loans Servicing, Debtor withdrew his

first disclosure statement on April 18, 2011.

---

[29] (...continued)
Estate Purchase and Sale Agreement.  That agreement was signed by Debtor in an apparently
personal capacity, *id.* at 13, but an "addenda" stated the seller was Brundage Inn, LLC, *id.* at
15-16.

[30]  Ex. 329.  However, the closing statement attached to the report of sale shows the seller
as Brundage Inn, LLC.

[31]  Coles testified under cross-examination that a $45,000 pre-payment on the note would
have been relevant to his analysis, and that he was not advised of such.

MEMORANDUM OF DECISION - 14

Debtor did not submit another proposed plan and disclosure statement until August 24, 2011.  After two creditors objected, Debtor filed another amended plan and disclosure statement.  After three more creditor objections, Debtor filed a "notice of modification" of this plan on November 30, which putatively resolved those objections.  This left only the UST's objection to confirmation questioning the plan's feasibility.

Shortly before a December 12, 2011, confirmation hearing on this plan, the UST filed a motion to dismiss or convert the case, citing Debtor's failure to file Rule 2015.3 reports, his delay in confirming a plan, and continuing losses to the estate without a reasonable likelihood of rehabilitation.[32]  Debtor subsequently filed past-due Rule 2015.3 reports and, at the hearing, the UST indicated its objections to confirmation were resolved.[33]

At this hearing, the Court gave Debtor two weeks to file a supplemental LBR 3020.1 confirmation report and a proposed order, after which the Court would take the matter under advisement.  Debtor appeared to be on the cusp of confirming the plan.  In order to resolve the UST's § 1112 motion regarding, *inter alia*, the delay in confirming a plan, Debtor and the UST stipulated on December 22, 2011 that Debtor would have until April 15, 2012 to achieve confirmation of

---

[32] Doc. No. 169.

[33] Doc. No. 189 (minute entry).

MEMORANDUM OF DECISION - 15

his plan.[34]  On January 4, 2012, the Court entered an order approving the stipulation and setting such a deadline for confirmation.[35]

However, Debtor's expected confirmation of this plan was impacted when the IDL appeared and explained that it had never received notice of this plan or the December, 2011 confirmation hearing because Debtor had failed to include its address when Debtor listed it as a creditor on his schedules.  Debtor subsequently stipulated to give the IDL additional time to object to confirmation of the pending plan, which IDL did.[36]  Despite the IDL's objection, Debtor continued to press forward with his attempt to confirm the plan.  At a hearing on February 13, 2012, the Court denied confirmation.  The Court also ordered Debtor to amend his disclosures, schedules and the plan to address *inter alia* the claims of IDL.[37]

On April 13, 2012, two days before the stipulated confirmation deadline, Debtor moved to set aside the order setting that deadline.[38]  Both the UST and the IDL objected.[39]  The Court sustained the objections, and entered an order denying

---

[34]  Ex. 322 (Doc. No. 195).

[35]  Ex. 323 (Doc. No. 201).

[36]  *See* Doc. No. 200; Ex. 324 (Doc. No. 205).

[37]  Ex. 325 (Doc. No. 220), entered February 16, 2012.

[38]  Doc. No. 236.

[39]  Doc. Nos. 238, 239.

MEMORANDUM OF DECISION - 16

Debtor's motion to set aside his agreed deadline.[40]

### E.    Pending § 1112 Motion and the Third Plan

The UST filed the § 1112 Motion now pending before the Court on May 23, 2012.  The § 1112 Motion contends Debtor failed to comply with the Court's January 4, 2012 order setting the stipulated April 2012 deadline for confirmation. *See* § 1112(b)(4)(E), (J).  It contends Debtor failed to obey the Court's February 16, 2012, order requiring Debtor to amend his schedules, disclosure statement and plan.  *See* § 1112(b)(4)(E).  It also asserts Debtor failed to timely and accurately satisfy all financial reporting requirements.  *See* § 1112(b)(4)(F), (H).  The day after the § 1112 Motion was filed, Debtor filed a new plan and disclosure statement.

When the § 1112 Motion first came on for hearing in June, 2012, the parties agreed to continue that hearing to a date and time to be established by the parties. On July 6, 2012, Debtor filed an amended disclosure statement and the Third Plan. The parties agreed that the § 1112 Motion would be heard at the same time as the confirmation hearing on the Third Plan set for August 27, 2012.

In addition to the grounds expressly stated in the § 1112 Motion, the UST also alleged additional cause for dismissal or conversion in a "supplement" to the

---

[40]  Doc. No. 245.

MEMORANDUM OF DECISION - 17

§ 1112 Motion filed on August 20, Doc. No. 288 ("Supplement").[41]  The

Supplement alleged cause based on Debtor's gross mismanagement of the

bankruptcy estate.  *See* § 1112(b)(4)(B).  In particular, the UST contends Debtor

improperly transferred property of the estate (the 1007 Lake Street property *via*

recording the quitclaim deed); deposited funds in other than debtor in possession

accounts (*e.g.*, payments on the 1007 Lake Street transaction, and rental income

from personal properties into the Brundage Inn, LLC accounts); failed to report or

misrepresented financial transactions in filed MORs and Rule 2015.3 reports (*e.g.*,

withdrawal for personal use of $15,000 from Brundage Inn, LLC, accounts); and

made an unauthorized payment to an accountant.[42]

  The August 20 Supplement also alleged Debtor failed to file required post-

petition tax returns.  *See* § 1112(b)(4)(I).  *See* Ex. 352 (IRS' June 2012 letter

---

[41]  Debtor objected to the Court's consideration of the additional grounds included in the
Supplement, contending that they were not timely raised or disclosed.  *See* Doc. Nos. 292, 298.
The Court continued the hearing and gave the parties additional time to prepare and conduct
discovery, but ordered that all aspects of the § 1112 Motion, including those raised in the
Supplement would be then heard.  *See* Doc. No. 300 (minute entry).  The Court also later
authorized Debtor to hire expert witnesses to defend against the UST's allegations, and extended
the hearing date even further.  *See* Doc. No. 310.  As noted earlier, the Hearing occurred on
November 14 and 15, 2012.

[42]  Debtor admitted during cross-examination that CPA William Corbett was paid
approximately $5,000 (the UST had alleged $5,275) post-petition by Brundage Inn, LLC, to
satisfy a pre-petition claim for Corbett's preparation of the personal 2009 tax returns for Debtor
and his non-filing spouse.  And, though Corbett and his firm, CPA Partners and Consultants,
PLLC, were approved under § 327(a) as Debtor's accountants effective April 7, 2012, *see* Doc.
No. 252 (order), Debtor's application to employ Corbett (and conjoined Rule 2014(a) verified
statement), Doc. No. 232 (filed April 7, 2012), did not disclose the mid-2011 payment or any
connection of Corbett with Brundage Inn, LLC.

MEMORANDUM OF DECISION - 18

regarding unfiled 2010 and 2011 chapter 11 estate returns); Ex. 353 (2010 returns

bearing a preparer's signature and September 2012 date); Ex. 111 (2011 returns,

with September 2012 date).[43]

Ada County, the IDL and the UST filed objections to confirmation of the

Third Plan, although Ada County withdrew its objection when Debtor paid his

delinquent post-petition taxes.  The IDL objected to Debtor's treatment of its

claims under the plan, and joined in the UST's objections.

The UST originally objected to confirmation of Debtor's Third Plan

because it was not feasible, but also included in its prehearing brief an argument,

among others, that the Third Plan failed to address the April 2012 schedule

amendment and related proof of claim of Malheur County.  On November 5, 2012,

Debtor filed a modification of the Third Plan to include treatment of Malheur

County's secured claim[44] and argued this late modification was sufficient to

address the UST's objection.

The modification provided that Malheur County holds a first position lien

on property in Ontario, Oregon, and that its claim of $19,464.21 would be paid at

21% interest over 60 months, or upon sale of the property.  Doc. No. 345 at 1.  The

modification did not address if or how this change would affect treatment of the

---

[43] Per Shuster, the returns were provided to the UST in October.

[44] Doc. No. 345.

MEMORANDUM OF DECISION - 19

claim of the consensual lien on that property under the Third Plan, nor how the

additional payments under the modification would affect the ability of Debtor to

make the $814.14 monthly payments to nonpriority unsecured creditors called for

under the Third Plan.[45]

Additionally, the UST raised another objection to confirmation at the

Hearing, based on the Black Forest claim.  The UST argued the Third Plan was not

confirmable because it failed to address and provide treatment of that claim.[46]

Debtor argued the claim could be addressed by a modification filed after the

hearing.  Debtor in fact filed a proposed, post-Hearing modification, indicating the

property securing the Black Forest claim would be surrendered.  *See* Doc. No.

356.[47]

---

[45]  Basic amortization calculations establish the suggested treatment of Malheur County
would require a monthly payment in excess of $500.  Debtor's modification does not establish
how payment of Malheur County's claim will be made without impacting the amount available
for unsecured creditors.  *See generally* Ex. 348 (UST's analysis of required plan payments).

[46]  *See In re Root*, 2012 WL 5193840, *4-6 (Bankr. D. Idaho Oct. 19, 2012)
(emphasizing the need for a plan to treat all secured claims in order to satisfy the requirements of
the Code).

[47]  Debtor and Black Forest also entered into a stipulation for stay relief, Doc. No. 355,
and immediately submitted a proposed order.  On November 20, the Court entered a summary
order refusing to execute the proffered stipulated order based on the failure of Debtor to comply
with Rule 4001(d), and because confirmation issues, including the post-Hearing attempted
modification, and the § 1112 Motion issues, were under advisement.

MEMORANDUM OF DECISION - 20

## DISCUSSION AND DISPOSITION

### A.    § 1112 Motion

A request to dismiss or convert a chapter 11 case is prosecuted under

§ 1112.  In pertinent part, that section currently[48] provides:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

>> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph

---

[48]  Section 1112 was amended by the Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, 124 Stat. 3561 (Dec. 22, 2010), removing some problematic language in § 1112(b) and clarifying the burdens on the party opposing dismissal or conversion as structured under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (2005) ("BAPCPA").  *See In re Wallace*, 2010 WL 378351 (Bankr. D. Idaho Jan. 26, 2010) (addressing the "linguistically difficult" post-BAPCPA language in § 1112(b)).  In general, cases construing § 1112(b) prior to the 2010 technical amendments remain sound and applicable; there is merely less of a linguistic challenge in construing the statute as presently written.

MEMORANDUM OF DECISION - 21

(4)(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

### 1. Cause

The movant under § 1112(b) must establish "cause." *In re Hinesley Family Ltd. P'ship No. 1*, 460 B.R. 547, 553 (Bankr. D. Mont. 2011) (citing *In re BTS, Inc.*, 247 B.R. 301, 303 (Bankr. N.D. Okla. 2000)); *see also Labankoff v. U.S. Trustee (In re Labankoff)*, 2010 WL 6259969 (9th Cir. BAP June 14, 2010).

The Code provides 16 specific, but non-exclusive, examples of cause in § 1112(b)(4). That the itemized grounds are non-exclusive fulfills the Congressional purpose of giving "wide discretion to the court to make an appropriate disposition of the case when a party in interest requests," by allowing the court to "consider other factors as they arise." *Wallace*, 2010 WL 378351, at *2–3 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 405–06 (1977)).

The UST has alleged cause exists under § 1112(b)(4)(B), (E), (F), (H) and (I).[49] Additionally, the Court concludes consideration of § 1112(b)(4)(J) is

---

[49] Although the UST's first motion to dismiss alleged cause existed under § 1112(b)(4)(A), the UST did not allege that ground in either the pending § 1112 Motion or the Supplement.

MEMORANDUM OF DECISION - 22

appropriate, because it is factually linked to the allegations supporting cause under

§ 1112(b)(4)(E).  *See Labankoff*, 2010 WL 6259969, at *5 (holding that a

bankruptcy court may find cause to convert a chapter 11 case *sua sponte*).

### a. Failure to comply with Court orders, and to confirm a plan within the time ordered

The UST argues Debtor failed to comply with two separate orders of this

Court, constituting cause under § 1112(b)(4)(E).  First, the UST argues Debtor

failed to comply with the January 4, 2012 order setting the stipulated deadline for

confirmation.[50]  Second, the UST argues Debtor failed to comply with the

provisions of the February 16, 2012 order denying confirmation of the Second

Plan, which required Debtor to "amend his disclosures, schedules and Plan

consistent with the Court's oral ruling."

Section § 1112(b)(4)(E) provides that "failure to comply with an order of

the court" constitutes cause to convert or dismiss a chapter 11 case.  The section

does not require repeated violations.  Instead, "[t]he statute is written in the

singular; thus failure to comply with a single order is sufficient for cause."  *In re

Bijelonic*, 2012 WL 2263289, *4 (C.D. Cal. June 15, 2012).  Further, failure to

comply with a court order need not be willful, in bad faith, or fraudulent, because a

---

[50]  The same facts that support finding cause under § 1112(b)(4)(E) for failing to comply
with the January 4 order also support finding cause for "failure to . . . confirm a plan, within the
time fixed  . . . by order of the court."  *See* § 1112(b)(4)(J).

MEMORANDUM OF DECISION - 23

debtor takes on the responsibilities required by the Code in availing himself of its

protections. *In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011) (citing *In re*

*Tornheim*, 181 B.R. 161 (Bankr. S.D.N.Y. 1995)).

The present case is in some ways similar to that of *In re McKay*, 2013 WL

66263 (Bankr. D. Idaho Jan. 4, 2013), because each deals with a deadline

established by an order entered on an agreement:

> The situation here is straight-forward. Debtor resolved a
> pending matter by expressly agreeing to a deadline for the filing of his
> disclosure statement and plan. That agreement was and is binding and
> enforceable. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir.
> 2002) (determining that an agreement is binding when placed on or
> memorialized in the record). The consequences of a failure to meet the
> agreed deadline were clear and foreseeable. This is especially true
> where the language of § 1112(b)(4)(J) is so plain. Debtor failed to
> abide by this agreed deadline, and cause for dismissal or conversion
> under § 1112(b)(4)(J) is thus clearly established. *See In re Jonas*, 2012
> WL 2921016 at *9-10 (Bankr. D. Mont. July 17, 2012) (finding cause
> under § 1112(b)(4)(J) where debtor bargained for an amount of time to
> file a disclosure statement and plan, and failed to perform under the
> bargain which was approved by the court and thus became an order of
> the court).

*Id.* at *2 (footnotes omitted).[51]

Section 1112(b)(4)(J) expressly establishes that a failure to confirm a plan

within the time fixed by a court order constitutes cause to convert or dismiss. This

---

[51] In *McKay*, the deadline was for filing a plan and disclosure statement; here it was for
obtaining confirmation. This factual distinction does not matter for purposes of § 1112(b)(4)(J),
which encompasses both failure to file, and to confirm, chapter 11 plans.

MEMORANDUM OF DECISION - 24

sub-section recognizes that "[a] debtor's failure to make meaningful and substantive progress toward the confirmation of a plan within the time periods fixed by the Bankruptcy Code and any court orders may lead to undue delay, and such delay is nearly always prejudicial to creditors." *Babayoff*, 445 B.R. at 79.[52]

Here, Debtor clearly failed to confirm a plan by April 15, 2012, the date set in the Court's January 4, 2012 order. No fraud, bad faith, or willfulness is necessary to establish cause under § 1112(b)(4)(E), regardless of Debtor's arguments about the unforeseeability of the situation arising with the IDL.[53] As stated in *Babakitis v. Robino (In re Robino)*, 243 B.R. 472, 487 (Bankr. N.D. Ala. 1999): "In the bankruptcy context, if a debtor wants the protections the Bankruptcy Code offers, that debtor must be willing to abide by the orders a court enters."

Debtor's failure to confirm a plan by the Court-ordered deadline constitutes cause under § 1112(b)(4)(E) and (J).[54]

---

[52]  Debtor's agreement with the UST regarding an April 15, 2012 confirmation deadline was reached and placed of record on December 22, 2011. The delay since that time is significant and, under the entirety of the evidence, prejudicial. However, the language of § 1112(b)(4)(J) does not require the Court to find prejudicial delay, only the failure to confirm a plan within the time fixed by the Court.

[53]  Here, and in other regards, Debtor's arguments seek to contest whether "cause" exists. At times, those arguments ignore the actual language of the subparagraphs of § 1112(b)(4). For example, § 1112(b)(4)(J) does not ask *why* the ordered deadline was unmet, or suggest that the reason for the failure is relevant to a finding of cause. The arguments are better and more accurately viewed as part of Debtor's attempts to meet the burdens imposed under § 1112(b)(2) *after* cause has been established. This issue is discussed *infra*.

[54]  Because cause under § 1112(b)(4)(E) and (J) exists in connection with the January 4,
(continued...)

MEMORANDUM OF DECISION - 25

b.      **Failure to timely file complete and accurate reports**

The UST also argues cause exists to convert or dismiss the case under

§ 1112(b)(4)(F) and (H), based on Debtor's failure to file timely and complete

MORs and Rule 2015.3 reports.

Section 1112(b)(4)(F) establishes that an "unexcused failure to satisfy

timely any filing or reporting requirement established by this title or by any rule

applicable to a case under this chapter" constitutes cause.  Section 1112(b)(4)(H)

establishes that "failure timely to provide information or attend meetings

reasonably requested by the United States trustee" also constitutes cause.

Timeliness is not the only concern under these sections: "Filing a piece of paper is

meaningless if the content is inaccurate, misleading, or wrong, thus the content of

these documents is always relevant."  *In re Tucker*, 411 B.R. 530, 532 (Bankr. S.D.

Ga. 2009).

The importance of timely and accurate reporting by a chapter 11 debtor-in-

---

[54] (...continued)
2012 order establishing a deadline to confirm the plan, there is little reason to spend time here
addressing Debtor's failure to amend his schedules, and to file an amended plan and disclosure
statement in accord with the Court's February 16 order denying confirmation of the Second Plan.
There was no hard deadline set in that Order.  Though it took Debtor over two months to amend
his schedules F and G to include the information brought forward by the IDL (and Debtor never
did amend his schedule A to remove the leased properties from it), and three months to file an
amended plan and disclosure statement (motivated by the UST's filing of the § 1112 Motion), the
amendments were eventually made.  The months-long delay was unreasonable and created further
prejudice to creditors, but whether this constitutes cause relates more to other provisions of
§ 1112(b)(4) than subpargraph (E).

MEMORANDUM OF DECISION - 26

possession was addressed in *In re Whetten*, 473 B.R. 380, 383-84 (Bankr. D. Colo. 2012):

> Monthly reports and the financial disclosures contained within them "are the life-blood of the Chapter 11 process" and are more than "mere busy work." *Matter of Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). Without these reports, the UST and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization. The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a "mere technicality." *In re Ronald Kern & Sons*, 2002 WL 1628908, at *1 (W.D.N.Y. June 11, 2002). . . . If a debtor does not fulfill this basic obligation during the Chapter 11 case, when it knows it will have to come before the court on any number of occasions, how can the creditors have any confidence that the debtor will timely and accurately report its income and make the required distributions under its plan, when the court and the UST are no longer monitoring the case? Consequently, the "importance of [filing] . . . monthly report[s] cannot be over-emphasized." *In re Myers,* 2005 WL 1324019, at *2 (10th Cir. BAP May 25, 2005). A debtor ignores this basic duty at its own peril.

The *Whetten* decision emphasized that disregard of reporting requirements can, by itself, be sufficient cause under § 1112(b). *Id.* at 384. *See also Kholyavka*, 2008 WL 3887653 (finding cause under § 1112(b)(4)(F) and (H) for failing to timely file operating reports).

In the case at bar, the record establishes Debtor treated his reporting responsibilities under the Code cavalierly. Several reports, particularly the Rule 2015.3 reports, were not filed until after the UST listed Debtor's failure to do so as

MEMORANDUM OF DECISION - 27

one of the grounds for the first Motion to Dismiss or Convert.  As stated in

*Whetten*:

> Nor does the fact that the Debtors eventually filed their reports cure this
> problem.  The late filing of catch-up monthly reports does not
> "satisfactorily explain or excuse failure to satisfy [a debtor's] duties as
> a chapter 11 debtor."  *In re Landmark Atlantic Hess Farm, LLC*, 448
> B.R. 707, 716-17 (Bankr. D. Md. 2011).  Filing catch-up reports is akin
> to locking the barn doors after the horses have already gotten out.

473 B.R. at 383.

In addition to the untimely filing of multiple required reports, Debtor also

substantively failed to comply with the reporting requirements by filing incomplete

and inaccurate reports.  Debtor failed to disclose equity draws he took from

Brundage Inn, LLC on both his MORs and his Rule 2015.3 reports, including

checks from Brundage Inn, LLC to Debtor that were not deposited in debtor in

possession accounts, direct payment of Debtor's pre- and post-petition debts by

Brundage Inn, LLC, and mortgage payments made for Villa Verona, LLC by

Brundage Inn, LLC.[55]  Further, the reports failed to disclose that Brundage Inn,

LLC was processing credit card transactions for Debtor's rentals.  The reports did

not disclose that Brundage Inn, LLC was receiving rent payments for an Arizona

property owned by Debtor's wife, and paying the mortgage on that same property.

---

[55] Debtor also admitted he took approximately $15,000 from a $25,000 line of credit
obtained by Brundage Inn, LLC, and used such funds in part for the repair and improvement of
his personal real property.

MEMORANDUM OF DECISION - 28

And the MORs never disclosed the sale, in August, 2010, only 3 months after filing bankruptcy, of the Micron stock, and the disposition of the proceeds from that unauthorized sale.

Whether Debtor deliberately concealed financial activities, or inadvertently misreported them due to a poor understanding of accounting principles or bankruptcy requirements, the result remains the same.  Creditors, the UST and the Court could not accurately and timely gauge Debtor's financial situation, the profitability of Debtor's business, Debtor's ability to live within the budget he set, his compliance with the Code and Rules, or the feasibility of his chapter 11 plan. Even if Debtor did not deliberately file misleading reports, Debtor had a responsibility to file complete and accurate reports.[56]  Even now, after Coles reviewed and corrected Debtor's Rule 2015.3 reports, the Court remains unconvinced of the accuracy of the reports.

Debtor's untimely, inaccurate and incomplete reports constitute cause to convert or dismiss his case under § 1112(b)(4)(F) and (H).[57]

---

[56]  It has been noted that serious consequences attend when "[m]eaningful disclosure was accorded too low a priority" by a debtor.  *See In re Fisher*, 2008 WL 1775123 at *11-12 (Bankr. D. Mont. Apr. 15, 2008) (quoting *In re Leija*, 270 B.R. 497, 502-03 (Bankr. E.D. Cal. 2001), and *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir. 1987)).  *Fisher* found this concept and reasoning, though arising from § 727(a) cases, applicable in the § 1112 context.  *Id.*

[57]  The Code's use of the adjective "unexcused" in § 1112(b)(4)(F) implies the Court has some discretion to decide whether an untimely or otherwise improper report is excused.  *In re Franmar, Inc.*, 361 B.R. 170, 178-79 (Bankr. D. Colo. 2006).  Whether considered under this

(continued...)

MEMORANDUM OF DECISION - 29

### c.    Gross mismanagement of the estate

The UST also alleges cause exists under § 1112(b)(4)(B) because Debtor "grossly mismanaged" his bankruptcy estate.  A debtor in possession's responsibility to manage the estate arises from its fiduciary duty to its creditors. *See Wallace*, 2010 WL 378351, at *4; *see also In re Domiano*, 442 B.R. 97, 105 (Bankr. M.D. Pa. 2010).  The UST argues gross mismanagement based on the unauthorized transfer of estate property, deposits of estate income in a non-debtor in possession account, and financial transactions misrepresented in reports.

Bankruptcy courts have found a wide variety of conduct can establish gross mismanagement.  For example, courts have found gross mismanagement due to a failure to attempt to recover property that arguably belonged to the estate, *In re Lodge at Big Sky, LLC*, 2011 WL 2358146 (Bankr. D. Mont. June 8, 2011), and a "failure to justify expenses, comply with financial reporting requirements, and keep accurate accounting records [leading] to a lack of control over estate cash," *In re Visicon Shareholders Trust*, 478 B.R. 292, 309 (Bankr. S.D. Ohio 2012).[58] This Court has previously found that a debtor in possession grossly mismanages

---

[57] (...continued)
language, or under the provisions of §§ 1112(b)(2) and (b)(2)(B)(i) discussed *infra*, the Court finds Debtor did not establish reasonable excuse or justification.

[58]  Thus the findings above regarding inadequate financial reporting and accountability are relevant here as well.

MEMORANDUM OF DECISION - 30

the bankruptcy estate by failing to follow the Code and get the Court's approval
for post-petition borrowing, paying pre-petition debts, and paying professionals.
*See, e.g.*, *Wallace*, 2010 WL 378351, at *4–5.

Here, as in *Wallace* and other chapter 11 cases, the UST provided Debtor
with Chapter 11 Guidelines which echo the Code's provisions and provide
guidance regarding how a debtor in possession should conduct his affairs and
protect the bankruptcy estate. The Guidelines instruct a debtor to "close its pre-
petition bank accounts and establish new 'debtor in possession' bank accounts,"
and to ensure all funds of the estate are deposited in such accounts. The
Guidelines also instruct a debtor to obtain court approval for, *inter alia*, paying
pre-petition debt, hiring and paying professionals, and selling assets outside the
ordinary course of business. Yet Debtor ignored several of the UST's warnings,
and proceeded to take improper actions.

Debtor made an unauthorized transfer of estate property by recording the
quitclaim deed to 1007 Lake Street. Debtor argued the transfer did not matter
because, after Brundage Inn, LLC sold the property, the income received or to be
received from the sale was pledged by Debtor to fund the Third Plan. But that
argument is unavailing. Debtor received the Court's approval for the sale (through
less than fully candid submissions) and pledged the sale receipts to creditors *after*
the misconduct – recordation of the quitclaim deed transferring property of the

MEMORANDUM OF DECISION - 31

estate to the separate, non-debtor entity – had already occurred.  In essence, Debtor

undertook actions to finesse the transfer after the fact.  Additionally, even in doing

so, Debtor failed to make a clear and express disclosure of what he had done, and

certain of the statements made in his submissions were patently false.[59]

Debtor also grossly mismanaged the estate by how he handled income.  For

instance, Debtor received three $5,000 checks made payable to him personally

from the Brundage Inn, LLC account, following that entity's obtaining a $25,000

line of credit.  He did not deposit the $15,000 into the debtor in possession bank

accounts.  Debtor testified that he spent some of the funds on repairs to his

personal residence, but otherwise did not explain where the $15,000 went.[60]  Other

"draws" were not deposited in debtor in possession accounts or tracked on MORs.

Additionally, payments of rent to Debtor on his personally owned properties, when

made by credit card, went instead into the Brundage Inn, LLC accounts.  The

failures of clear accounting raise questions about whether the amounts of all of

those payments were ultimately transferred into the debtor in possession accounts.

All such activity impedes transparency and clarity regarding the financial

---

[59]   Debtor is a real estate professional with 30 years of experience.  This impacts how the
UST, creditors and the Court are entitled to view Debtor's "confusion" over the quitclaim deed
and the state of record title to this property, and Debtor's suggested lack of appreciation of the
effect of recordation of that deed.

[60]   During the Hearing, Debtor initially denied spending these funds on his personal
residence, until impeached with contrary deposition testimony in Ex. 354.

MEMORANDUM OF DECISION - 32

transactions effecting the estate.

In addition, Debtor grossly mismanaged the estate by selling the Micron stock and doing so without disclosure or requisite Court approval.  The proceeds of the sale were not reported, and the UST learned of the event only after receiving Debtor's tax returns shortly before the Hearing.  Debtor also effected an improper payment to his CPA, Corbett.  Debtor failed to report equity draws from the Brundage Inn, LLC, including cash payments, direct payments of Debtor's expenses, and payments of the mortgage of Villa Verona, LLC.

Cause is established under § 1112(b)(4)(B).

### d.    Failure to file tax returns

The IRS advised Debtor in June 2012 that he failed to file required post-petition 2010 and 2011 tax returns.  *See* Ex. 352 (specifically referring to the chapter 11 case).  The 2010 and 2011 tax returns for Debtor's bankruptcy estate were ultimately prepared by CPA Partners and Consultants, PLLC, and signed and dated by CPA's with that entity in the fall of 2012.  Exs. 102, 353 (2010 returns); Ex. 111 (2011 returns).

Section 1112(b)(4)(I) provides that "cause" includes "failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief."  Though Debtor's testimony was that these tax returns were filed (and that no taxes are owed), when the returns were filed remains unclear.  It does not appear that the estate returns which were prepared in

MEMORANDUM OF DECISION - 33

September, 2012, would be – whenever subsequently filed – timely.  The record

establishes cause under § 1112(b)(4)(I).[61]

## 2.    Exception to Dismissal

Once the movant establishes cause to convert or dismiss the case, the

burden shifts to the party opposing the motion, usually the debtor, to establish

grounds for applying the exception under § 1112(b)(2) and avoid conversion or

dismissal.

As this Court held in *McKay*:

> With cause present, § 1112(b)(2) commands the Court to
> convert or dismiss the case unless Debtor establishes a statutory reason
> not to so rule.  One court has summarized these shifting burdens of
> § 1112 as follows:
>
>> Once the movant establishes cause, the burden shifts to
>> the debtor to demonstrate by evidence "unusual
>> circumstances" that establish that dismissal or
>> conversion to chapter 7 is not in the best interests of the
>> creditors and the estate. *See* 7 *Collier on Bankruptcy* at
>> ¶ 1112.05[2]. The bankruptcy court retains discretion in
>> determining whether unusual circumstances exist and
>> whether conversion or dismissal is in the best interest of
>> creditors and the estate. *See id.*; *Gilroy v. Ameriquest
>> Mortg. Co. (In re Gilroy)*, 2008 Bankr.Lexis 3968
>> (B.A.P. 1st Cir. 2008). A determination of unusual

---

[61]  One court has indicated that the language of the section "does not specifically require
timely filing of tax returns, only that they be filed." *In re Draiman*, 450 B.R. 777, 801 (Bankr.
N.D. Ill. 2011).  This Court respectfully disagrees.  The grammatical structure of the provision,
when parsed, makes clear that the adverb "timely" applies to both payment and filing (*i.e.*,
"failure timely to pay . . . or to file").  *Accord United States v. Ron Pair Enters.*, 489 U.S. 235,
241-42 (1989) (using grammatical construction to interpret § 506(b) of the Code).  That Congress
intended timeliness to apply solely to *payment* of the taxes and not to the *filing* of the returns is
inconsistent with such a grammatical construction, and is not otherwise established.

MEMORANDUM OF DECISION - 34

circumstances is fact intensive and contemplates facts that are not common to chapter 11 cases. *See* 7 *Collier on Bankruptcy* at ¶ 1112.05[2].

*In re Hosp. de Damas, Inc.*, 2012 WL 1190651, *3 (Bankr. D.P.R. Apr. 9, 2012). The Collier treatise, cited by such court, states:

> Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. Courts have much discretion in making the determination as to whether there are unusual circumstances that should prevent dismissal or conversion. Although a finding of unusual circumstances is within the court's discretion, the word "unusual" contemplates facts that are not common to chapter 11 cases generally. A determination of the existence of unusual circumstances is necessarily fact intensive. An order that denies the requested dismissal or conversion on the basis of "not in the best interests" appears susceptible to reversal on appeal unless the required specifically identified unusual circumstances are a part of the court's findings of record.

> 7 Collier on Bankruptcy ¶ 1112.05[2] at 1112-43 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2011).

2013 WL 66263 at *2-3. *See also In re Labankoff*, 2010 WL 6259969 at *4 (9th Cir. BAP 2010) (discussing the exception as formulated prior to the 2010 amendment).

As the court noted in *Kholyavka,* 2008 WL 3887653, at *3 n.9, if cause is proven, "relief is mandatory unless the debtor meets its burden under § 1112(b)(2)." *Kholyavka*, 2008 WL 3887653 at *3.

Those burdens are not just to show "unusual circumstances," but also to

MEMORANDUM OF DECISION - 35

satisfy § 1112(b)(2)(A) and (B)(i) and (ii).  Thus the Court must convert this case

unless: (1) there are proven unusual circumstances that establish such relief is not

in the best interests of creditors and the estate, and (2) the debtor establishes (a)

there is a reasonable likelihood a plan will be confirmed within a reasonable period

of time and (b) the grounds for finding cause include an act or omission (i) for

which there exists a reasonable justification and (ii) the acts or omissions will be

cured within a reasonable period of time set by the Court.  *See* § 1112(b)(2); *see*

*also McKay*, 2013 WL 66263, at *2-3; *In re Julian*, 2012 WL 506573 (Bankr. D.

Conn. Feb. 15, 2012); *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 713

(Bankr. D. Md. 2011); *Kholyavka*, 2008 WL 3887653 at *3.

      Here, the Court need not decide whether there are "unusual circumstances,"

because Debtor did not establish a "reasonable justification" for his acts and

omissions.  *See* § 1112(b)(2)(B)(i).  Whether or not by design, Debtor has

repeatedly failed to disclose assets and transactions necessary for the UST and

creditors to properly evaluate the estate and Debtor's reorganization plans.  Debtor

has repeatedly attempted to blame others for these problems.  For instance, he

appeared to blame Valley County or the title company for the fact that his 2008

quitclaim deed conveying 1007 Lake Street to Brundage Inn, LLC was not

recorded prior to bankruptcy.  That discounts the fact that he is a long-term real

estate professional, and also ignores the fact that pre-bankruptcy errors of either

the County or the title company had little if anything to do with his conduct after

MEMORANDUM OF DECISION - 36

bankruptcy in connection with that deed.  He points to the UST as not signaling to
him that his MORs and Rule 2015.3 reports were incomplete or late.  That others
do not sound an alarm is not a justification for a debtor's untimely and inadequate
reporting.  Debtor further claims his myriad reporting and disclosure mistakes
were inadvertent.  Debtor's asserted lack of improper intent is no excuse, and his
"substantial (though late) compliance" approach ignores the burdens placed on a
debtor in possession by the Code and Rules.  Those burdens are the *quid pro quo*
for the relief chapter 11 provides.

Debtor also has not justified his failure to comply with this Court's January
2012 order.  Debtor expressly stipulated to a confirmation deadline in order to
resolve the UST's previous motion to dismiss or convert, and the Court set that
deadline in an agreed order.  Debtor had many months before the deadline ran.  He
must live with the consequences of that agreement.

Finally, Debtor's gross mismanagement of the estate is also not reasonably
justified.  Rather than dealing in a straight-forward manner with the problem of
ownership of the 1007 Lake Street property, Debtor made submissions that
misstated facts, and concealed the intentional act of a post-petition recording of the
quitclaim deed.  Debtor did not disclose in any fashion the sale of the Micron
stock, much less seek required Court approval on notice to creditors.  Debtor
commingled the financial affairs of his bankruptcy estate and the related non-
debtor entities, and failed to file timely and complete MORs and Rule 2015.3

MEMORANDUM OF DECISION - 37

reports.  The § 1112(b)(2) exception is not applicable to this case, because

Debtor's actions constituting cause to convert or dismiss are not reasonably

justifiable.  Moreover, for several, there is no ability to "cure" the acts or

omissions.

### 3.    Conversion or dismissal

The Court must next determine, in light of the language of § 1112(b)(1),

whether conversion or dismissal is in the best interests of the creditors and the

estate.  *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 729

(9th Cir. BAP 2008).  The UST and the IDL urged the Court to convert the case

because a chapter 7 trustee could potentially avoid any pre- or post-petition,

improper conveyances; investigate Debtor's financial affairs; take control of

Debtor's ownership interests in the three limited liability companies; and otherwise

bring about an orderly liquidation of Debtor's assets for the benefit of all creditors.

Debtor's arguments did not address whether conversion or dismissal would better

serve the interests of his creditors.[62]

Courts have considered many factors to determine what is in the best

interest of the creditors and the estate, including:

---

[62]  Debtor's arguments focused instead on the cramdowns he had negotiated with secured creditors under the Third Plan, in an attempt to persuade the Court that neither conversion nor dismissal would be in creditors' best interests.  That sort of argument may be applicable to the § 1112(b)(2) exception (though here unpersuasively so).  However, it is not an argument that is relevant to the choice between conversion and dismissal, once cause has been found and once it is determined that the burdens of § 1112(b)(2) are unmet.

MEMORANDUM OF DECISION - 38

(1) Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

(2) Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.

(3) Whether the debtor would simply file a further case upon dismissal.

(4) The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

(5) In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

(6) Whether any remaining issues would be better resolved outside the bankruptcy forum.

(7) Whether the estate consists of a "single asset."

(8) Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

(9) Whether a plan has been confirmed and whether any property remains in the estate to be administered.

(10) Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*Rand v. Porshe Fin. Servs. (In re Rand)*, 2010 WL 6259960, *10 n.14 (9th Cir. BAP Dec. 7, 2010) (citing 7 *Collier on Bankruptcy* ¶ 1112.04[7] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2010)).  In weighing the best interests of the creditors, a court must consider the interests of all of the creditors.  *Shulkin Hutton, Inc. v. Treiger (In re Owens)*, 552 F.3d 958, 961 (9th Cir. 2009) (citing *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir. 1994)).

Without belaboring what has already been stated, there is ample basis for the Court to conclude that conversion is appropriate and in the best interests of the creditors and the estate.

MEMORANDUM OF DECISION - 39

### B.    Confirmation

The above findings and conclusions that cause under § 1112 has been shown, and that the case shall be converted to a chapter 7 liquidation, effectively moot the issues surrounding confirmation of the Third Plan.  To be thorough, however, the Court here finds and concludes that the Third Plan could not be confirmed on this record.

The Court may confirm a chapter 11 plan if its proponent proves by a preponderance of the evidence either (1) the plan meets all of the § 1129(a) requirements or, (2) if the only requirement not satisfied is the § 1129(a)(8) requirement that all impaired classes accept the plan, the plan satisfies the "cramdown" alternative of § 1129(b).  *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'Ship* (*In re Ambanc La Mesa Ltd. P'ship*), 115 F.3d 650, 653 (9th Cir. 1997).  The bankruptcy court has an affirmative duty to ensure a chapter 11 plan satisfies the confirmation requirements of § 1129(a).  *Id.*

The first two elements of § 1129(a) that Debtor must face, and the Court must find satisfied, are that the plan complies with the applicable provisions of Title 11, and that the plan proponent complies with all the applicable provisions.  *See* § 1129(a)(1), (2).  The findings and conclusions in regard to the § 1112 Motion, *supra*, make clear that Debtor and his Third Plan are not in compliance

MEMORANDUM OF DECISION - 40

with the applicable provisions of the Bankruptcy Code in numerous regards.[63]

Confirmation of the Third Plan, if not rendered moot by conversion on the

UST's § 1112 Motion, would be denied.

**CONCLUSION**

For the reasons stated above, the Court will grant the § 1112 Motion, and

the case will be converted to chapter 7.  Confirmation is rendered moot.  The Court

will enter an order in accord with this Decision.

DATED:  January 17, 2013

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[63] The Court recognizes that additional grounds for denying confirmation may exist.  *See
generally*, *Root*, 2012 WL 5193840.  The parties also extensively debated whether Debtor met the
feasibility requirement of § 1129(a)(11).  The Court determines that, in light of the other grounds
for denying confirmation of the Third Plan, the Court need not address these arguments further.

MEMORANDUM OF DECISION - 41